UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERMAINE MERRELL HOLLIE,<br>        Petitioner,<br>    v.<br>GARY SWARTHOUT,<br>        Respondent. | Case No. 12-cv-00417-WHO (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

# INTRODUCTION

Jermaine Hollie seeks federal habeas relief from his state convictions because the six year statute of limitation relied upon by the State at trial was not tolled and had expired between September 20, 1996, when Hollie allegedly raped the victim, and February 2006, when he was charged. The State now argues that a ten year statute applies. In addition, Hollie asserts that he received ineffective assistance of counsel in negotiating a plea deal, in failing to call certain witnesses, including Hollie himself, and in failing to seek an instruction regarding the loss of evidence. Because the ten year statute applies, and because the other claims lack merit, the petition for federal habeas relief is DENIED.

# BACKGROUND

In 2008, a San Mateo County Superior Court jury found Hollie guilty of rape and sexual penetration with a foreign object. He received a sentence of ten years in state

prison. His efforts to overturn his convictions in the state courts were unsuccessful. This federal habeas petition followed.

Evidence presented at trial showed that in 1996, Hollie raped Athena, an adult female. (Ans., Ex. 7 at 2-5 (State Appellate Opinion, *People v. Hollie*, 180 Cal. App. 4th 1262 (Cal. Ct. App. Jan. 8, 2010).) The evidence included the match of Hollie's DNA signature to that drawn from vaginal swabs taken from Athena, her identification of him at trial as the perpetrator, and evidence that she had suffered multiple scratches, abrasions, bruising, and a swollen lip during the attack. (*Id.* at 5-6; Ex. 9, Vol. 6 at 557-61, 608.) The prosecutor also presented evidence that in 1998 Hollie committed the uncharged offense of raping a 15 year old female, Sarah. (*Id.*, Ex. 7 at 5-6.)

Hollie's defense at trial was that he had consensual sex with Athena. (Pet. at 8; Ans., Ex. 9, Vol. 9 at 1120, 1145.) During his initial questioning by police, however, he denied "any knowledge of Athena or contact with her." (Ans., Ex. 7 at 4.)

As grounds for federal habeas relief, Hollie alleges that (1) defense counsel rendered ineffective assistance; and (2) his right to due process was violated by the lack of a preliminary hearing on the DNA evidence, and by the state's changing on appeal its argument regarding the statute of limitations.

**STANDARD OF REVIEW**

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

2

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

When presented with a state court decision that is unaccompanied by a rationale for its conclusions, a federal court must conduct an independent review of the record to determine whether the state-court decision is objectively reasonable. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). This "[i]ndependent review . . . is not *de novo* review of the constitutional issue, but rather, the only method by which [a federal court] can determine whether a silent state court decision is objectively unreasonable." *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011).

## DISCUSSION

### I. Due Process

Hollie was not linked to the 1996 rape of Athena until 2005. In that year, his DNA signature was found identical to the one drawn from a semen sample taken from Athena.

3

1  In 2006, the prosecutor filed charges. Hollie claims that the statute of limitations barred
2  his prosecution. He also claims that the prosecution failed to adhere to the statute's
3  requirement that a preliminary hearing be held.
4      Here are the relevant facts. The offense occurred on September 20, 1996, when the
5  statute of limitations was "six years after the commission of the offense." (Ans., Ex. 7 at
6  2, 9.) In February 2006, charges were filed against Hollie, which was nearly ten years
7  after the offense occurred. The defense moved to dismiss the indictment as untimely. The
8  trial court denied the motion:

> The trial court accepted the prosecution's argument that the statute of limitations was tolled in the present case by section 803, subdivision (g), which specifies that, "Notwithstanding any other limitation of time described in this chapter, a criminal complaint may be filed within one year of the date on which the identity of the suspect is conclusively established by DNA testing," if the crime is "one that is described in subdivision (c) of Section 290" and the DNA analysis occurred no later than January 1, 2004. (Italics added.) The jury also found that the case against defendant had been filed within the period of limitations, as tolled by section 803, subdivision (g). Defendant claims that according to the plain language of the statute, section 803, subdivision (g), applies only if a prosecution is initiated by a complaint filed after a preliminary hearing, whereas the present case was initiated by an indictment. He therefore argues that the six-year statute of limitations was not tolled by the discovery of DNA evidence and expired long before the proceedings began in February of 2006.

(*Id.* at 6-7.)

    On appeal, the Attorney General raised a new timeliness contention:
> For the first time on appeal the Attorney General presents the contention that the case is governed by the 10–year statute of limitations specified in section 801.1, subdivision (b), rather than the six-year statute of limitations stated in section 800. Section 801.1, subdivision (b), provides: "Notwithstanding any other limitation of time described in this chapter, if subdivision (a) does not apply, prosecution for a felony offense described in subdivision (c) of Section 290 shall be commenced within 10 years after commission of the offense." The Attorney General points out that [Hollie] was charged with and convicted of offenses listed in section 290, subdivision (c), so the specific 10–year limitations applies, and the action was timely filed — that is, before September 20, 2006. [Hollie] replies that the prosecution "relied solely on section 803(g)(1)" at trial both in the charging document and presentation of the

4

> statute of limitations issue to the jury, and cannot seek to change the theory of the case on appeal.

(*Id.* at 7.) The state appellate court rejected Hollie's due process claim.

Federal habeas relief is not warranted. The state appellate court reasonably determined that no due process violation occurred for several reasons. Hollie had notice of the Attorney General's new argument regarding the statute of limitations, and he had an opportunity to and did respond to it. Further, the prosecution was never time-barred--the indictment was filed within the ten-year period established by Penal Code section 801(b). In this regard, the state appellate court rejected any notion that there was an *ex post facto* violation. Before the six-year period expired, the legislature extended the limitations period to ten years. (Ans., Ex. 7 at 9-10.) Because of that, no *ex post facto* violation occurred. *See Stogner v. California*, 539 U.S. 607, 618 (2003).

In addition, the lack of a preliminary hearing presents no federal constitutional claim.[1] Penal Code Section 801.1(b) permitted Hollie's prosecution without such process. And finally, this Court is bound by the state court's determination that the prosecution was timely under state law. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

**II.**     For each of these reasons, the claim is DENIED.**Assistance of Counsel**

Hollie alleges that defense counsel rendered ineffective assistance by failing to (A) correctly inform him of the maximum sentence he faced if convicted; (B) present witnesses to support the defense of consent; and (C) seek proper jury instructions on the loss of evidence.

Claims of ineffective assistance of counsel are examined under *Strickland v.*

---

[1] Hollie claims in his traverse that the denial of the preliminary hearing denied him a chance to have a hearing on the DNA evidence. Specifically, he claims that there were two "DNA's" in the victim. According to him, only one was tested, the other assumed to be that of Athena's husband. This claim is denied for three reasons. First, it was raised in the traverse, not the petition. Second, Hollie has not supported his assertion about two "DNA's" by pointing to any specific part of the record. Third, he has not shown that this other DNA belonged to another person. As it was not tested, one cannot know what sort of genetic material it was, nor who produced it. He may mean by tested that the DNA evidence was not checked against the genetic markers of others in a DNA database. Whatever value such testing may have produced is entirely speculative and certainly does not show prejudice.

5

*Washington*, 466 U.S. 668 (1984). In order to prevail on a claim of ineffectiveness of counsel, the petitioner must establish two factors. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms, *id.* at 687-68, "not whether it deviated from best practices or most common custom," *Richter*, 131 S. Ct. at 788 (citing *Strickland*, 466 U.S. at 690). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* at 787 (quoting *Strickland*, 466 U.S. at 689).

Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* Where the defendant is challenging his conviction, the appropriate question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S. Ct. at 792 (citing *Strickland*, 466 U.S. at 693).

The standards of both 28 U.S.C. § 2254(d) and *Strickland* are "highly deferential . . . and when the two apply in tandem, review is doubly so." *Id.* at 788 (quotation and citations omitted). "The question [under § 2254(d)] is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

### A. Maximum Sentence

Hollie claims that defense counsel did not know, and therefore did not inform him that he faced ten years in prison if convicted. Rather, counsel erroneously informed Hollie that he faced a maximum sentence of sixteen years, a misapprehension shared by the prosecutor. (Ans., Ex. 9, Vol. 9 at 1292.) Before trial, petitioner declined a plea offer that would have resulted in a sentence of 8 years. (*Id.*) After conviction but before sentencing,

United States District Court
Northern District of California

Hollie acquired new counsel. Counsel argued that 10 years was the maximum, as opposed to the prosecution's assertion that it was 16 years. The prosecutor's error, according to counsel, arose from his use of a statute amended <u>after</u> the crime was committed. (*Id.*, Ex. 10, Vol. 3 at 6-7.) The trial court agreed, and sentenced petitioner to 10 years pursuant to the statute in effect when the crime was committed. (*Id.*, Ex. 10, Vol. 3 at 893; Vol. 4 at 1300-01.)

Hollie raised this ineffective assistance claim to the state courts only by way of a habeas petition to the state supreme court, which, summarily and without citation, denied the petition. (Ans., Ex. 8.) This Court must presume that the state supreme court's summary disposition was an adjudication of the merits of all claims raised in the petition. *Richter*, 131 S. Ct. at 784-85. Because the claim was summarily disposed of, this Court must conduct an independent review to determine whether the state court's decision was "objectively reasonable." *See Delgado*, 223 F.3d at 982.

Habeas relief is not warranted. Even if Hollie had shown that counsel's performance was deficient, he has not shown that he was prejudiced by such performance. His claim is insufficiently detailed. He alleges without elaboration that counsel's incorrect knowledge impaired his ability to be an effective representative. He fails to specify exactly how counsel could have been a more effective or effective advocate.

Moreover, there is no allegation, much less a showing, that Hollie would have obtained a lesser sentence if counsel had had the correct information. Put another way, he has not shown that the prosecution would have accepted (or offered) a plea bargain containing a sentence of less than the real maximum. What offer, if any, the prosecution would have made had the facts been different is entirely speculative. From the offer of 8 out of a possible 16 year maximum, one could infer that the prosecution would have offered a term of half the maximum (5 out of possible 10). One could also infer that the prosecution was not willing to agree to anything less than 8 years. (If that were the case, the record shows that Hollie was not willing to take an offer of 8 years.) Because different facts make for different outcomes, one could also reasonably suppose that no offer would

have been made if the prosecutor had known the correct sentence. There is no evidence to support one of these possibilities over another. They are all speculation. Also, there is no allegation or showing that the trial court would have accepted any plea. In sum, there has been no allegation or showing that the likelihood of a different result was substantial, not just conceivable. *Richter*, 131 S. Ct. at 792 (citing *Strickland*, 466 U.S. at 693). On this record, the state court's decision was not objectively unreasonable. Therefore, its decision is entitled to AEDPA deference. Hollie's claim is DENIED.

### B.     Presentation of Defense Witnesses

Hollie claims that counsel was ineffective in not calling witnesses, including Hollie himself, to support the defense. This claim was presented only to the state supreme court, which summarily denied the claim.

#### 1. Calling Other Witnesses

Habeas relief is not warranted here. As to the first part of his claim, the petition does not list what specific witnesses counsel should have called, or what testimony such witnesses would have provided. Failure to identify such information is a failure to show that trial counsel's performance was deficient, or that the alleged deficiency resulted in prejudice. *See Gallego v. McDaniel*, 124 F.3d 1065, 1077 (9th Cir. 1997).

In his traverse, Hollie asserts that defense counsel should have called a witness (Von Allen), who would have corroborated Hollie's assertion that he was innocent of the uncharged conduct with Sarah. This claim cannot succeed. First, this claim must be denied because Hollie failed to raise it in his petition. *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994). Second, even if Hollie had properly presented his claim, he cannot show prejudice. More specifically, Hollie has not presented evidence (such as a declaration from Von Allen) showing that Von Allen was willing and available to testify, and what his testimony would be. Hollie's self-serving assertions are insufficient to sustain his claim. *See Dows v. Wood*, 211 F.3d 480, 486 (9th Cir. 2000); *Allen v. Woodford*, 366 F.3d 823, 846 n.2 (9th Cir. 2004).

Two more points are worth making. First, Von Allen's testimony, had it been

presented, might have at best undermined the probative value of the uncharged conduct. It would not discredit or undermine the evidence that Hollie raped Athena, that is, her in-court identification of petitioner and the DNA evidence. Second, Von Allen's corroborative testimony would have had little or no value unless Hollie testified. If Hollie had testified, his credibility would have been dramatically undermined. The DNA evidence flatly contradicted his initial assertion to police that he had no contact with or knowledge of Athena. His unreliability on this crucial point would have in turn undermined the plausibility of his assertion that the sex was consensual.

Hollie claims in his traverse that counsel should have called a Mr. Sell, who died before trial, to testify at the preliminary hearing. (Trav. at 17-18.) According to petitioner, Sell would have testified that Athena encouraged her children to fabricate child abuse allegations, testimony that may have impeached Athena's credibility. (*Id.*) This claim will be denied for two reasons. First, it cannot be considered because it was raised in Hollie's traverse, rather than in the petition. *See Cacoperdo*, 37 F.3d at 507. Second, even if the claim had been properly presented, it lacks merit. Failing to call Sell at the preliminary hearing was neither a deficient performance nor prejudicial. Counsel could not have known that Sell would die before trial, and therefore could not have known that preserving his testimony was needed. Also, Sell would not have been an appropriate preliminary hearing witness. A preliminary hearing in California is simply to determine whether the charges are supported by reasonable or probable cause and is not a hearing on all matters concerning guilt and prosecution. *See* Cal. Penal Code §§ 866(b), 995. Sell's assertions would involve a hearing within a hearing, as it would be necessary to call other witnesses to corroborate or impeach Sell. Counsel's decision not to call Sell was, therefore, reasonable.

This claim is DENIED.

### 2. Calling Hollie to Testify

Hollie asserts that he wanted to testify at trial and that defense counsel said he would call him to the stand. Yet the record establishes that Hollie waived his right to testify. Waiver of the right to testify at one's trial may be inferred from the defendant's conduct and is presumed from the defendant's failure to testify or notify the court of his desire to do so. *See United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993) (citation omitted). A defendant who wants to reject his attorney's advice and take the stand may do so by insisting on testifying, speaking to the court or discharging his lawyer. *See id.* A defendant waives the right to testify if he remains silent in the face of his attorney's decision not to call him as a witness. *United States v. Pino-Noriega*, 189 F.3d 1089, 1094-95 (9th Cir. 1999); *United States v. Nohara*, 3 F.3d 1239, 1244 (9th Cir. 1993). Hollie has shown no evidence that he spoke to the court, insisted on testifying, discharged his lawyer, or otherwise indicated that he wanted to testify. The state court's decision was not objectively unreasonable and is therefore entitled to AEDPA deference. This claim is DENIED.

### C. Jury Instructions on the Loss of Evidence

Hollie claims that defense counsel was ineffective in failing to request appropriate jury instructions regarding the loss of evidence by the police. It appears that this argument stems from Athena's testimony that on the night of the attack, she and Hollie stopped at a 7-11 store. The security camera footage from the 7-11 store where Athena and Hollie stopped was unavailable at trial. (Ans., Ex. 9, Vol. 7 at 621.) Hollie's claim is not clear but the Court infers that Hollie believes that the police lost the footage, or at least failed to recover it before destruction, and that it would have bolstered Hollie's credibility if it had been produced. Counsel, Hollie asserts, should have sought a jury instruction regarding the lost evidence.

Habeas relief is not warranted. Such an instruction was unnecessary because there was no dispute that Hollie went to a 7-11 that evening. The victim herself testified to that

1 fact. The footage would not have aided his defense in terms of credibility or otherwise.[2]
2 Counsel's performance was neither deficient nor did it cause prejudice. The state court's
3 decision was reasonable, and therefore is entitled to AEDPA deference. Accordingly, the
4 claim is DENIED.

## CONCLUSION

6 The state court's adjudication of Hollie's claims did not result in decisions that were
7 contrary to, or involved an unreasonable application of, clearly established federal law, nor
8 did they result in decisions that were based on an unreasonable determination of the facts
9 in light of the evidence presented in the state court proceeding. Accordingly, the petition
10 is DENIED.

11 A certificate of appealability will not issue. Reasonable jurists would not "find the
12 district court's assessment of the constitutional claims debatable or wrong." *Slack v.
13 McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability
14 from the Ninth Circuit.

15 The Clerk shall enter judgment in favor of respondent and close the file.

16 **IT IS SO ORDERED.**

17 **Dated:** July 3, 2014



WILLIAM H. ORRICK
United States District Judge

---

[2] In his traverse, Hollie claims that an instruction should have been given that the police or prosecution destroyed the tapes because it favored the defense. He asserts that the videotape would have undermined Athena's credibility. Specifically, it would have shown that the two were friendly and affectionate with each other, and that there was no sign of coercion or force, indicating therefore that their interactions were consensual. (Trav. 10-12.) This claim is DENIED. First, it was raised in the traverse, not in the petition. Second, there was no evidence to support the giving of such instruction. His assertion that the police or prosecutor destroyed evidence is without support. Third, he cannot show prejudice. Athena testified that she and Hollie had been friendly with each other prior to the rape. (Ans., Ex. 6 at 619-25.) The similar additional evidence purportedly contained in the video tape would therefore have been cumulative.